UNITED STATES, Appellee

v.

Brian A. MURPHY, Private
U.S. Army, Appellant

No. 14-0767

Crim. App. No. 20120556

United States Court of Appeals for the Armed Forces

Argued April 28, 2015

Decided July 8, 2015

RYAN, J., delivered the opinion of the Court, in which BAKER, C.J., and STUCKY and OHLSON, JJ., joined. ERDMANN, J., filed a separate opinion concurring in the result.

Counsel

For Appellant: Captain Brian J. Sullivan (argued); Colonel Kevin Boyle (on brief).

For Appellee: Captain Anne C. Hsieh (argued); Colonel John P. Carrell, Major A. G. Courie III, and Captain Benjamin W. Hogan (on brief); Lieutenant Colonel James L. Varley and Major Steven J. Collins.

Military Judge: G. Bret Batdorff

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

Consistent with Appellant's pleas, Appellant was convicted by a military judge sitting as a general court-martial of two specifications of conspiracy to sell military property, one specification of wrongfully using a controlled substance, and two specifications of larceny in violation of Articles 81, 112a, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 912a, 921 (2012).[1]  He was sentenced to a bad-conduct discharge, confinement for forty-eight months, and a reduction to the grade of E-1.  Pursuant to a pretrial agreement, the convening authority approved the sentence but reduced the confinement period to seventeen months.

On appeal under Article 66, UCMJ, 10 U.S.C. § 866 (2012), the United States Army Court of Criminal Appeals (ACCA) consolidated Specifications 1 and 2 of Charge I, alleging violations of Article 81, UCMJ, and affirmed the modified Charge I and its specification, setting aside the finding of guilty of the original Specification 2 of Charge I and affirming the remaining findings of guilty and approved sentence.  United States v. Murphy, 73 M.J. 699, 705 (A. Ct. Crim. App. 2014) (en

---

[1] Consistent with his pleas, the military judge found Appellant not guilty of two specifications of willfully failing to secure ammunition and one specification of making a false official statement in violation of Articles 92 and 107, UCMJ, 10 U.S.C. §§ 892, 907 (2012).

banc).  We granted Appellant's petition to review the following

issue only:

> WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED IN
> CONCLUDING THAT AMMUNITION CONSTITUTES AN EXPLOSIVE FOR
> PURPOSES OF THE SENTENCE AGGRAVATOR OF ARTICLES 108 AND
> 121, UCMJ.

We hold that the ACCA did not err in concluding that the

5000 rounds of ammunition Appellant stole is included in the

definition of "explosive" provided in Rule for Courts-Martial

(R.C.M.) 103(11) and that Appellant did not establish a

substantial basis in law or fact for questioning his guilty

plea.

## I.  FACTS

In August 2011, Appellant entered into a conspiracy with

Specialist (SPC) WW to steal and sell military ammunition.

Murphy, 73 M.J. at 700.  On September 6, 2011, Appellant and SPC

WW stole two boxes of loose 5.56 millimeter ammunition, a total

of 1800 loose rounds, from the back of a military truck in the

company area, taking it to SPC WW's home, where they sold it to

a third party.  Id.  Later that day, they returned to the

company area to steal additional rounds, this time taking two

crates of 5.56 millimeter ammunition, another 3200 linked

rounds.  The rounds were secreted in SPC WW's backyard shed

rather than sold immediately.  Id.

Appellant pleaded guilty to "steal[ing] . . . 5.56 mm ammunition, which are explosives, military property, property of the United States government."  No value was alleged.  Manual for Courts-Martial, United States pt. IV, para. 46.e.(1)(c) (2008 ed.) (MCM), nonetheless prescribes an increased maximum punishment for larceny of an explosive, irrespective of value, of "[d]ishonorable discharge, forfeiture of all pay and allowances, and confinement for 10 years."  In comparison, MCM pt. IV, para. 46.e.(1)(a), concerning larceny of "[m]ilitary property of a value of $500 or less" excluding firearms, explosives, vehicles, aircraft, and vessels, carries a maximum punishment of "[b]ad-conduct discharge, forfeiture of all pay and allowances, and confinement for 1 year."

During the providence inquiry, the military judge instructed Appellant on the elements of Article 121, UCMJ, as well as the definition of "explosives."  The military judge defined "explosives" as "gun powders, powders used for blasting, all forms of high explosives, blasting materials, fuses other than electrical circuit breakers, detonators and other detonating agents, smokeless powders, any explosive bomb, grenade, missile, or similar device, and any incendiary bomb or grenade, firebomb, or similar device."  The military judge did not state the source of this definition.  Appellant answered that he understood the definition.

The military judge later asked Appellant if he was aware that the ammunition he stole was an explosive. Appellant answered in the affirmative and stated he knew it was "[b]ecause I dealt with ammunition the whole time I was at Fox Company and I was very well aware that it was an explosive." The military judge then said, "I have . . . an excerpt from Army Regulation 75-14 that provides the definition of explosives. Do you agree that paragraph 3(e) encompasses small arms ammunition as explosives?" Dep't of the Army, Reg. 75-14, Interservice Responsibilities for Explosive Ordnance Disposal para. 3.e. (Feb. 14, 1992) [hereinafter AR Reg. 75-14].[2] Appellant answered in the affirmative. The military judge asked, "And is 5.56 millimeter ammunition an explosive in accordance with this Army regulation?" Appellant answered, "Yes, that is correct."

---

[2] Paragraph 3.e. of AR Reg. 75-14 defines "Explosive Ordnance (EO)" as:

> Bombs and warheads; guided and ballistic missiles; artillery, mortar, rocket, and small arms ammunition; all mines, torpedoes, and depth charges; grenades demolition charges; pyrotechnics; clusters and dispensers; cartridge- and propellant-actuated devices; electroexplosive devices; clandestine and improvised explosive devices (IEDs); improvised nuclear devices (INDs); and all similar or related items or components explosive in nature. This definition includes all munitions containing explosives, propellants, nuclear fission or fusion materials, and biological and chemical agents.

## II.  ACCA DECISION

On appeal, Appellant argued that the military judge erred by accepting his guilty plea because "5.56 mm ammunition is not an explosive." Murphy, 73 M.J. at 701. The ACCA, sitting en banc, held that ammunition is plainly an explosive because gunpowder is listed in R.C.M. 103(11), which defines "explosive." Id. Further, it found that the ACCA panel in United States v. Lewis, No. ACM 20120797, 2013 CCA LEXIS 188, 2013 WL 1960747 (A. Ct. Crim. App. Feb. 27, 2013), erred in relying on United States v. Graham, 691 F.3d 153 (2d Cir. 2012), vacated on other grounds, 133 S. Ct. 2851 (2013), in which the United States Court of Appeals for the Second Circuit held that firing a single bullet near the victim was not using an explosive to commit a felony. Murphy, 73 M.J. at 701-02.

## III.  DISCUSSION

This Court will not disturb a guilty plea unless Appellant has demonstrated that there is "a substantial basis" in "law or fact" for questioning the plea. United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008). "[W]e review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo." Id. It is undisputed that Appellant stole, in aggregate, approximately 5000 rounds of 5.56 mm ammunition. Appellant alleges that there is a substantial basis in law to question the providence of his

plea because ammunition is not an explosive within the meaning of either R.C.M. 103(11), or MCM pt. IV, para. 46.e.(1)(c), and because the definition of "explosive" given by the military judge rendered the plea improvident.  We disagree.

There is no substantial basis in law upon which to question Appellant's plea because the definition of explosives in R.C.M. 103(11) includes ammunition and Appellant described all the facts necessary to establish his guilt.

A.

"[I]t is axiomatic that '[i]n determining the scope of a statute, we look first to its language.'"  United States v. Kearns, 73 M.J. 177, 181 (C.A.A.F. 2014) (second alteration in original) (quoting United States v. Turkette, 452 U.S. 576, 580 (1981)).  This Court further looks to provisions of related statutes.  United States v. Falk, 50 M.J. 385, 390 (C.A.A.F. 1999).  We apply the same interpretive process when analyzing a rule promulgated by the President in the MCM.  United States v. Rendon, 58 M.J. 221, 224 (C.A.A.F. 2003); see United States v. Muwwakkil, No. 15-0112, 2015 CAAF LEXIS 485, at *17, 2015 WL 3444622, at *7 (C.A.A.F. May 28, 2015).

R.C.M. 103(11) includes ammunition for three main reasons. First, the text at issue, R.C.M. 103(11), defines an "[e]xplosive" as:

gunpowders, powders used for blasting, all forms of
high explosives, blasting materials, fuzes (other than
electrical circuit breakers), detonators, and other
detonating agents, smokeless powders, any explosive
bomb, grenade, missile, or similar device, and any
incendiary bomb or grenade, fire bomb, or similar
device, and any other compound, mixture, or device
which is an explosive within the meaning of 18 U.S.C.
§ 232(5) or § 844(j).

This definition is by its terms expansive and inclusive.  It

includes all items listed in both 18 U.S.C. § 844(j)[3] and 18

U.S.C. § 232(5),[4] and is thus more expansive than either § 844(j)

---

[3] 18 U.S.C. § 844(j) is part of the penalty provision of the
"Explosives Control Act," 18 U.S.C. §§ 841-48 (2012).  It reads:

> For the purposes of subsections (d), (e), (f), (g), (h),
> and (i) of this section . . . , the term "explosive" means
> gunpowders, powders used for blasting, all forms of high
> explosives, blasting materials, fuzes (other than electric
> circuit breakers), detonators, and other detonating agents,
> smokeless powders, other explosive or incendiary devices
> within the meaning of paragraph (5) of section 232 of this
> title, and any chemical compounds, mechanical mixture, or
> device that contains any oxidizing and combustible units,
> or other ingredients, <u>in such proportions, quantities, or
> packing that ignition by fire, by friction, by concussion,
> by percussion, or by detonation of the compound, mixture,
> or device or any part thereof may cause an explosion.</u>

Emphasis added.

[4] 18 U.S.C. § 232(5) provides a definition of "explosive or
incendiary device" for Chapter 12 of the U.S.C. dealing with
civil disorders.  It reads:

> The term "explosive or incendiary device" means (A)
> dynamite and all other forms of high explosives, (B) any
> explosive bomb, grenade, missile, or similar device, and
> (C) any incendiary bomb or grenade, fire bomb, or similar
> device, including any device which (i) consists of or
> includes a breakable container including a flammable liquid

or § 232(5) individually.  The repeated use of the word "any" along with the clause incorporating both statutes by reference indicates, as a general matter, that R.C.M. 103(11) is intended to be inclusive.  Cf. Babbitt v. Sweet Home Chapter of Communities of a Great Oregon, 515 U.S. 687, 705 (1995).

Also instructive for our purposes, R.C.M. 103(11) incorporates by reference § 844(j)'s catch-all clause, which includes within its definition of explosives:

> any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

Emphasis added.  This clause makes clear that § 844(j) (and thus R.C.M. 103(11)) covers not just self-evidently explosive devices, such as bombs, but also those items that may be explosive due to contextual factors such as the quantity of the "compound, mixture, or device," as well as how it is packed. 18 U.S.C. § 844(j); see United States v. Davis, 202 F.3d 212, 219 (4th Cir. 2000) (citing the catch-all clause in § 844(j) to conclude that "[g]unpowder clearly is an 'explosive,' not only

---

> or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

because it is specifically identified as such in the statutory definition . . . but also by its properties and use").  By the same token, a device that shares characteristics with or resembles an explosive but would not "cause an explosion" is not covered by R.C.M. 103(11).  Using the language of 18 U.S.C. § 232(5), R.C.M. 103(11) limits the application to "any explosive bomb, grenade, missile, or similar device" (emphasis added), indicating that it does not apply, for example, to common smoke grenades, which do not explode or ignite but only emit smoke as a signal or to provide concealment.  The 18 U.S.C. § 844(j) catch-all clause similarly applies only to compounds, mixtures, or devices that "may cause an explosion."

Ammunition is generally comprised of three main components: "projectiles together with their fuzes, propelling charges, and primers that are fired."  Webster's Third New International Dictionary Unabridged 71 (1986).  Neither party disputes that ammunition contains a small amount of gunpowder in each round. Final Brief on Behalf of Appellant at 6, 12, 17, 18, United States v. Murphy, No. 14-0767 (C.A.A.F. Feb. 23, 2015); Brief on Behalf of Appellee at 9-10, United States v. Murphy, No. 14-0767 (C.A.A.F. Mar. 29, 2015).  More importantly, ammunition is packed and intended to be expelled by action of its explosive component after the hammer strikes the primer.

10

Second, we read R.C.M. 103(11) alongside a complementary definition in the MCM, which is in accord.  United States Nat. Bank of Oregon v. Indep. Ins. Agents of America, Inc., 508 U.S. 439, 454-55 (1993) (noting that statutory construction is a holistic endeavor).  R.C.M. 103(12) clarifies that ammunition is an explosive, given that it defines a "firearm" as "any weapon which is designed to or may be readily converted to expel any projectile by the action of an explosive."  (Emphasis added.)  R.C.M. 103(12) identifies the essential components of ammunition as a projectile, such as a bullet, and the explosive that expels it, typically gunpowder.  The primer is part and parcel of the ammunition, and gunpowder is the first listed item in R.C.M. 103(11)'s definition of "explosives."  We agree with the ACCA that "if a servicemember's individual weapon is only a firearm if it discharges by virtue of an explosive, then the ammunition which provides that required explosive must, by logic, be included within that term's definition."  Murphy, 73 M.J. at 704.

Third, the penalty sections of 18 U.S.C. § 844 give further insight into what specific items are explosives within the meaning of § 844(j) and, by extension, R.C.M. 103(11).  Falk, 50 M.J. at 390; see also United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often

clarified by the remainder of the statutory scheme . . . .").

Subsection 844(g), which provides penalties for possessing

explosives, exempts "the possession of <u>ammunition</u> . . . in an

airport . . . <u>if such ammunition</u> is either in checked baggage or

in a closed container." 18 U.S.C. § 844(g)(2)(A) (emphasis

added). By implication, because 18 U.S.C. § 844(g)(2)(A)

exempts ammunition when contained in checked commercial airline

baggage, ammunition is ordinarily included in the definition in

§ 844(j).[5] If § 844(j) did not include ammunition, the statute

would not need to make an explicit exemption allowing for it to

be possessed in certain narrowly prescribed circumstances.

<u>Babbitt</u>, 515 U.S. at 724 ("[S]tatutes should be read so far as

possible to give independent effect to all their provisions.").

Contrary readings would have to assume that the exemption has no

meaning and is surplusage. <u>Microsoft Corp. v. i4i Ltd.</u>

<u>Partnership</u>, 131 S. Ct. 2238, 2248 (2011) (discussing the canon

against superfluity).

In addition to the textual bases for concluding that

ammunition is an explosive under R.C.M. 103(11), we note that

---

[5] This inference is bolstered by 18 U.S.C. § 845(a) and (a)(4),
which indicate that the penalty provisions of § 844 using the
§ 844(j) definition regulate small arms ammunition by default.
Subsections 845(a) and (a)(4) state that "[Chapter 40] shall not
apply to" "small arms ammunition and components thereof" but
also explicitly except numerous subsections from this statement,
including the penalty provisions of § 844 (such as § 844(g))
that use the § 844(j) definition.

the sentence enhancement for larceny of an explosive under MCM

pt. IV, para. 46.e.(1)(c), further bolsters this conclusion in

the military context, as it addresses not only concerns of loss

of life and property, but other concerns unique to the military.

The armed forces have a responsibility to ensure that the

firearms and explosives that are in their care are controlled,

housed, and used safely, and that they are mission ready.  With

this in mind, the MCM provides for a sentence enhancement for

larceny of these objects "because, regardless of the intrinsic

value of such items, the threat to the community and disruption

of military activities is substantial when such items are

wrongfully taken.  Special accountability and protective

measures are taken with firearms and explosives, and they may be

the target of theft regardless of value."  MCM, Analysis of

Punitive Articles app. 23 at A23-17 (2008 ed.).  The armed

forces must ensure a proper complement of firearms and

explosives so that servicemembers can be trained and so that the

armed forces can respond when called.  Id.  Much like explosive

chemical compounds, bombs, or grenades, ammunition, because it

contains gunpowder and is a necessary component of firearms,

implicates all of these concerns in a way that other types of

military property, such as canteens, do not.  See Murphy, 73

M.J. at 704.

13

The Second Circuit's reasoning in Graham, which Appellant relies on for the proposition that ammunition is not included in § 844(j) and therefore, he argues, not included in R.C.M. 103(11), does not counterbalance the foregoing reasons for concluding that larceny of 5000 rounds of ammunition is larceny of an explosive. 691 F.3d at 164. In Graham, the appellant fired a gun once during a robbery and was charged, inter alia, for using an explosive during the commission of a felony under 18 U.S.C. § 844(h)(1). 691 F.3d at 154-55, 157. The Second Circuit held that, "it is not reasonable to construe § 844(j) as including within its ambit a single 9-millimeter cartridge, simply because it contains a small amount of gunpowder and can be fired from a gun." Id. at 164. But see Davis, 202 F.3d at 219 (holding that "[t]he ammunition in a loaded handgun is . . . an 'explosive' under § 844(j)"). The Second Circuit was careful to limit its holding to the facts of that case, explicitly stating that "[w]e do not hold here that ammunition generally (small arms or otherwise), which may conceivably be employed in quantities or in a manner far different from the single 9-millimeter cartridge discharged by Graham, cannot fall within § 844(j)'s definition of explosive." 691 F.3d at 164. Because the case before us deals with theft of 5000 rounds of ammunition in the military context, we do not deem the decision in Graham in conflict with ours.

14

B.

Having concluded that the ammunition that Appellant stole constituted an "explosive" under R.C.M. 103(11) as a matter of law, we now turn to the question whether the definition the military judge provided for explosives affected the providence of the plea.  United States v. O'Connor, 58 M.J. 450, 453 (C.A.A.F. 2003); United States v. Jones, 34 M.J. 270, 272 (C.M.A. 1992).  A plea is provident so long as Appellant was "convinced of, and [was] able to describe, all of the facts necessary to establish [his] guilt."  O'Connor, 58 M.J. at 453. The military judge has a duty "to accurately inform [an] [a]ppellant of the nature of his offense" and "[a]n essential aspect of informing . . . is a correct definition of legal concepts."  United States v. Negron, 60 M.J. 136, 141 (C.A.A.F. 2004); see also United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969) (codified at R.C.M. 910(c)).  Yet, failure to define correctly a legal concept or "explain[] each and every element of the charged offense to the accused in a clear and precise manner" "is not reversible error if it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty." Jones, 34 M.J. at 272; see also United States v. Redlinski, 58 M.J. 117, 119 (C.A.A.F. 2003).

United States v. Murphy, No. 14-0767/AR

The first definition for explosives the military judge gave did not include the language of or refer to 18 U.S.C. § 232(5) and § 844(j). Given that these statutes are explicitly incorporated into R.C.M. 103(11), both informing and supplementing it, the military judge should have informed Appellant of those definitions during the providence inquiry. See Jones, 34 M.J. at 272; Redlinski, 58 M.J. at 119. It was not reversible error, however, to fail to do so. See Jones, 34 M.J. at 272 (plea was provident where the military judge stated that there was federal jurisdiction over the location of the crime, as required by the statute, but did not define that term, because the appellant discussed the jurisdictional issue with defense counsel and pleaded unconditionally); United States v. Kilgore, 21 C.M.A. 35, 36, 44 C.M.R. 89, 90 (1971) (holding a plea to be provident where the military judge "questioned the accused closely as to the factual allegations of various specifications, but did not separately detail the elements of each offense, either by way of preface or summary." (emphasis added)); see also Redlinski, 58 M.J. at 119 (citing Kilgore, 21 C.M.A. at 37, 44 C.M.R. at 90, Jones, 34 M.J. at 272, and United States v. Pretlow, 13 M.J. 85, 88 (C.M.A. 1982), for the proposition that "[r]ather than focusing on a technical listing of the elements of an offense, this Court looks . . . to determine whether an accused is aware of the elements, either

16

explicitly or inferentially"). The military judge properly explained the elements of Article 121, UCMJ, and explained the elements of the sentence enhancement under MCM pt. IV, para. 46.e.(1)(c). Appellant stated that he understood the first definition for explosives that the military judge provided, and agreed that "the definitions [of the elements of larceny] taken together correctly describe what [he] did with respect to the offenses to which [he] pled guilty." Most importantly, Appellant testified that he was "very aware" that ammunition is an explosive. Review of the record shows that Appellant knew the elements of Article 121, UCMJ, including the sentence enhancement for larceny of explosives, and stated all of the facts necessary to establish that he violated Article 121, UCMJ, by stealing approximately 5000 rounds of ammunition, which he understood were explosives. O'Connor, 58 M.J. at 453; see also Jones, 34 M.J. at 272. Thus, the failure to read § 232(5) and § 844(j) does not establish a substantial basis for questioning Appellant's plea. Inabinette, 66 M.J. at 322; O'Connor, 58 M.J. at 453.

The second definition of "explosives" the military judge gave to illustrate the conclusion that small arms ammunition are explosives, AR Reg. 75-14, is not part of, nor incorporated in, R.C.M. 103(11). In light of our conclusion, however, that small arms ammunition does constitute an explosive and is included in

17

R.C.M. 103(11), AR Reg. 75-14 is not inconsistent with R.C.M. 103(11).[6]  Accordingly, the military judge's use of AR Reg. 75-14 also does not establish a substantial basis in law or fact for questioning Appellant's plea.  Inabinette, 66 M.J. at 322; see also United States v. Finch, 73 M.J. 144, 149 (C.A.A.F. 2014) (holding that a single inconsistent reference to images of virtual minors during the providence inquiry did not "establish that a substantial basis in law or fact exists to reject his plea" where the appellant pled guilty to possessing images of actual minors).

## IV.  CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

[6] We do not decide whether the other items listed in AR Reg. 75-14 would also be considered "explosives" under R.C.M. 103(11) because this case deals only with larceny of small arms ammunition.

ERDMANN, Judge (concurring in the result):

I concur with the majority's decision that there is no substantial basis in law or fact for questioning Murphy's guilty plea, including his agreement that the ammunition was an explosive and therefore subject to the sentence aggravator provisions of MCM pt. IV, para. 46.e.(1)(c). I depart from the majority, however, as to the rationale for that conclusion. Due to the ambiguities in the definition of "Explosive" in R.C.M. 301(11), it is not at all clear that 5.56 mm ammunition is an explosive under R.C.M. 103(11). However, I do not believe that holding ammunition to be an explosive is necessary to our review of the guilty plea. Due to the colloquy between Murphy and the military judge, I do not find a substantial basis in law or fact to question the providence of the plea.

Murphy was charged with and convicted of conspiracy to steal and the subsequent theft of government-owned ammunition, which was identified in the charge sheet as an explosive. MCM pt. IV, para. 46.e.(1) sets forth the punishments for larceny and subsection (c) provides a sentence aggravator for theft of military property with a value of more than $500,[1] or for any military vehicle, aircraft, vessel, firearm, or explosive. As

---

[1] At trial it was established that the conspiracy and theft involved 1800 rounds of loose 5.56 mm ammunition with a value of $1024.00, and 3200 rounds of linked 5.56 mm ammunition with a value of $1824.00.

the government did not allege the value of the ammunition in the charge sheet but did identify the ammunition as an explosive, the issue here is whether ammunition can be considered an explosive for purposes of the sentence aggravator in MCM pt. IV, para. 46.e.(1)(c).

Initially, there is a distinction here that is important. Murphy was charged with conspiracy/theft of ammunition and the government identified the ammunition as an explosive. However, in the context of the sentence aggravator, there has been no argument that the ammunition itself is an explosive.[2] Both the government and the majority rely on the presence of gunpowder in each round of ammunition to satisfy the definition of "Explosive" in R.C.M. 103(11). That rationale, however, conflates ammunition with gunpowder.

For purposes of the MCM, the term "Explosive" is defined in R.C.M. 103(11) as follows:

> "Explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electrical circuit breakers), detonators and other detonating agents, smokeless powders, any explosive bomb, grenade, missile, or similar device, and any incendiary bomb or grenade, fire bomb, or similar device, and any other compound, mixture, or devices which is an explosive within the meaning of 18 U.S.C. § 232(5) or 844(j).

---

[2] As noted by the majority, ammunition is comprised of three main components: the projectile, propelling charges (gunpowder), and primers.

2

The CCA found that ammunition was an explosive as it contained gunpowder, a substance which is included in the R.C.M. 103(11) definition of explosive.  United States v. Murphy, 73 M.J. 699, 701 (A. Ct. Crim. App. 2014).  However, the presence of gunpowder in a round of 5.56 mm ammunition does not necessarily convert a round of 5.56 mm ammunition into an explosive.

The President specifically listed several devices which contain gunpowder in R.C.M. 103(11), i.e., explosive bomb, grenade, missile, but did not include ammunition.  The canon of statutory construction expressio unius est exclusio alterius, provides guidance in interpreting the omission of "ammunition" in R.C.M. 103(11).  Specifically, because the expression of one thing is the exclusion of another we must presume that the exclusion of "ammunition" is intentional.  As such, we should not read ammunition into the plain language of the statute. United States v. Kick, 7 M.J. 82, 88-89 (C.M.A. 1979) (Perry, J., dissenting) (explaining that under the cannon of construction expressio unius est exclusio alterius, language omitted in an otherwise comprehensive statutory scheme is presumed intentional).  In addition, where the President's narrowing construction is favorable to an accused and is not inconsistent with the language of a statute, "we will not

disturb the President's narrowing construction." United States v. Davis, 47 M.J. 484, 486–87 (C.A.A.F. 1998).

The majority also relies on the definitions of explosive found in 18 U.S.C. §§ 232(5) and 844(j), which are incorporated by reference into R.C.M. 103(11). 18 U.S.C. § 232(5) is the definitional statute in Chapter 12 of Title 18, Civil Disturbances, and provides:

> The term "explosive or incendiary device" means (A) dynamite and all other forms of high explosives, (B) any explosive bomb, grenade, missile, or similar device, and (C) any incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

As this provision is limited to "explosive or incendiary device[s]," it is not relevant to the issue of whether 5.56 mm ammunition is an explosive. Neither party argued that the 5.56 mm rounds were either explosive or incendiary.

The majority primarily relies on the definition contained in 18 U.S.C. § 844(j), which is part of the penalty provisions for Chapter 40 of Title 18, Importation, Manufacture, Distribution and Storage of Explosive Materials. Subsection 844(j) provides:

> For the purposes of subsections (d), (e), (f), (g), (h), and (i) of this section and section 842(p), the term "explosive" means gunpowders, powders used for

4

> blasting, all forms of high explosives, blasting
> materials, fuzes (other than electric circuit
> breakers), detonators, and other detonating agents,
> smokeless powders, other explosive or incendiary
> devices within the meaning of paragraph (5) of section
> 232 of this title, and any chemical compounds,
> mechanical mixture, or device that contains any
> oxidizing and combustible units, or other ingredients,
> in such proportions, quantities, or packing that
> ignition by fire, by friction, by concussion, by
> percussion, or by detonation of the compound, mixture,
> or device or any part thereof may cause an explosion.

The majority, focusing on the clause in the last five lines of this definition, makes a compelling argument that this language includes ammunition, as it includes "compounds, mixtures, or devices that 'may cause an explosion.'" United States v. Murphy, __ M.J. __, __(10) (C.A.A.F. 2015). The mixture or compound that explodes in this case is the gunpowder contained in the ammunition. While that inclusion does not convert the ammunition into an explosive, this provision would appear to provide the most support for the government's theory. However, there is some uncertainty as to whether this definition is even applicable to the circumstances of this case.

Murphy was charged with conspiracy to steal and the subsequent theft of the ammunition, which the government identified as an explosive. Under Chapter 40 of Title 18, it does not appear that the definition relied upon by the majority would apply in this case. 18 U.S.C. § 845 is entitled "Exceptions; relief from disabilities." Subsection (a) provides

5

that "[e]xcept in the case of subsection (l), (m), (n), or (o)
of section 842 and subsections (d), (e), (f), (g), (h), and (i)
of section 844, this chapter shall not apply to: . . . (4) small
arms ammunition and components thereof." 5.56 mm ammunition is
considered small arms ammunition by the Department of Defense.[3]
None of the excepted provisions in 18 U.S.C. § 845(a) include
conspiracy to steal and sell explosives (even if we were to
assume that ammunition is an explosive) or the actual theft of
explosives.[4] As the federal statutory definition relied upon by
the government and the majority would not be applicable to this
situation under federal civilian law, there is a significant
question as to whether it is applicable in a military justice
context.

At the very least there is an ambiguity as to whether 5.56
mm ammunition is an explosive as that term is defined in R.C.M.
103(11). Any ambiguity, therefore, should be resolved in favor

---

[3] DOD Dictionary of Military and Associated Terms defines "small
arms ammunition" as "Ammunition for small arms, i.e., all
ammunition up to and including 20 millimeters (.787 inches),"
available at http://dtic.mil/doctrine/dod_dictionary/data/s/7078.html
(last visited July 7, 2015).
[4] 18 U.S.C. § 842 (l), (m), (n), and (o) all pertain to plastic
explosives. 18 U.S.C. § 844(d) applies to transportation of
explosives with knowledge it will be used to kill, injure, etc.,
(e) involves making threats by mail, telephone or telegraph to
use explosives, (f) applies to the malicious damaging or
destroying of government property with explosives, (g) involves
possession of an explosive in an airport, (h) involves using an
explosive to commit any felony, and (i) involves the malicious
destruction of any building or vehicle by explosive.

of the accused.  Cleveland v. United States, 531 U.S. 12, 25 (2000) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." (citation and internal quotation marks omitted)); United States v. Beaty, 70 M.J. 39, 44 (C.A.A.F. 2011) ("This court has 'long adhered to the principle that criminal statutes are to be strictly construed, and any ambiguity resolved in favor of the accused. . . .'" (quoting United States v. Thomas, 65 M.J. 132, 135 (C.A.A.F. 2007))).  Therefore, I do not join that portion of the majority opinion which holds that 5.56 mm ammunition is an explosive under R.C.M. 103(11).

However, as this is a guilty plea case, that uncertainty does not necessarily mean that the plea was not provident.  A guilty plea will be rejected only where the record of trial shows a substantial basis in law and fact for questioning the plea.  Thomas, 65 M.J. at 133-34.  The failure to correctly define a legal concept is not reversible error if it is clear from the entire record that the accused understood the charges and, in this case, that the ammunition was being charged as an explosive for purposes of the sentence aggravator.

The issue as to whether ammunition was an explosive was recognized early in the court-martial.  Prior to the arraignment the military judge summarized what had transpired during an R.C.M. 802 session with the counsel.  The military judge stated

7

that he had asked both counsel for documentation that 5.56 mm ammunition was an explosive.  The military judge had therefore identified a potential issue in the providence inquiry and had asked the parties to address it.  During the subsequent providence inquiry the defense did not object to the definitions that the military provided for "explosive" and Murphy acknowledged numerous times that the ammunition was an explosive.  Notably, this acknowledgment included Murphy's assurance to the military judge that he had "dealt with ammunition the whole time I was at Fox Company and I was very aware that it was an explosive."  Accordingly, it is clear from the colloquy that Murphy was on notice ammunition was being charged as an explosive.

I therefore concur in the result.