# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 QUINCY C. BROADEN**
**United States Army, Appellant**

ARMY 20150414

Headquarters, 25th Infantry Division
Gregory A. Gross, Military Judge
Colonel Williams D. Smoot, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA (on brief and supplemental brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A. G. Courie III, JA; Major Steven J. Collins, JA; Captain Linda Chavez, JA (on brief); Lieutenant Colonel A. G. Courie III, JA; Major Scott L. Goble, JA; Captain Linda Chavez, JA (on supplemental brief).

3 August 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A general court-martial composed of a military judge sitting alone convicted appellant, pursuant to his pleas, of one specification of conspiracy to commit larceny, one specification of robbery, and one specification of obstruction of justice, in violation of Articles 81, 122, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 922, 934 (2012) [hereinafter UCMJ]. The court-martial sentenced appellant to be discharged from the Army with a bad-conduct discharge, to be confined for fifty-four months, to forfeit all pay and allowances, and to be reduced to the grade of E-1. The military judge credited appellant with three days of pre-trial confinement credit. The convening authority approved pre-trial confinement credit and the sentence except that, pursuant to a pretrial agreement, he approved only three years of confinement.

Appellant pleaded guilty to, among other offenses, conspiracy to commit larceny of about $527.  We specified the issue of whether appellant's plea colloquy adequately established that the criminal conspiracy included an agreement that the amount to be stolen was more than $500.  We find it did not.  We therefore affirm only the lesser included offense of conspiracy to commit larceny of some value.

## BACKGROUND

### A. *The Conspiracy*

As part of a pretrial agreement, the parties stipulated to the relevant facts in the case.

Appellant, his girlfriend, and Privates Terrell Price and Markel McNeil entered into an agreement to rob a stranger.  Their plan was to have appellant's girlfriend, Ms. Kassandra Melendez, dress as a prostitute on Waikiki beach and lure the victim into a place where the three soldiers would then rob him.  Appellant told the other soldiers Ms. Melendez had done this before with some success.  To carry out their plan appellant drove the quartet towards Honolulu, stopping at a Walmart where they purchased three bandanas to cover the soldiers' faces.  The three soldiers also possessed realistic looking "airsoft" pistols to use in the robbery.  They then drove to Waikiki to find a victim.

Ms. Melendez stood on a street corner attempting to attract the attention of male passersby.  Eventually she was approached by Mr. SO, a homeless man who lived in a tent on Waikiki.  After attracting his interest, Ms. Melendez escorted Mr. SO to a nearby store to purchase condoms.  As he purchased the condoms, she observed how much money he had.  She then told appellant it appeared Mr. SO had "a large amount of cash on his person."  Appellant and his two co-conspirators waited across the street.

The three soldiers discussed who would lead the robbery.  Appellant decided he would lead, and the others would be "in tow."  Appellant then approached Mr. SO and asked him if he had any money.  Mr. SO denied having cash.  Appellant then initially displayed the airsoft pistol tucked in his waistband, and subsequently took weapon out in order frighten Mr. SO into giving up the money.  The other two soldiers then similarly displayed their airsoft pistols.  Mr. SO was terrified, and stated that he "didn't want to die," and asked "[i]f I give you all of my money will you please leave me alone?"  Mr. SO then turned over his entire wallet.  Appellant removed the money from the wallet, and returned the wallet to Mr. SO.

Appellant and his three co-conspirators then left.  The three soldiers headed back to appellant's vehicle, while Ms. Melendez walked in another direction.  Appellant coordinated with Ms. Melendez about where to pick her up.

Mr. SO, suspecting that Ms. Melendez was involved in the robbery, followed her.  He also called the police.  Honolulu police noticed appellant's car matched Mr. SO's description and pulled appellant over after he made an illegal U-turn.  A search of the vehicle recovered the stolen cash, the airsoft pistols, and the bandanas.

Appellant told police he had not taken part in the robbery, that the pistols in his car had been in his possession at all times, and that he had no idea why $527 was found hidden under the front seat of his car.  Appellant's co-conspirators, however, were much more cooperative with the police.

### B. The Conspiracy Charge

As noted above, appellant stipulated that he "orchestrated a conspiracy to commit robbery."  The surrounding facts support such a charge.  Nonetheless, appellant was not charged with conspiracy to commit robbery.  He was charged with robbery and conspiracy to commit *larceny* of $527.

### C. The Plea Inquiry

Confusion about the conspiracy charge continued during the plea inquiry.  The military judge advised appellant on the elements of conspiracy to commit robbery, an offense with which appellant was not charged.  Nonetheless, and consistent with the stipulation of fact, appellant was provident to the offense.

### LAW

This court will not disturb a guilty plea unless an appellant has demonstrated that there is "a substantial basis" in "law or fact" for questioning the plea.  *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).  "[W]e review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo."  *Id.*; *see also United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015).

### DISCUSSION

As an initial matter, appellant's plea inquiry adequately established he was guilty of conspiracy to commit larceny.  Although he was advised on the elements of conspiracy to commit "robbery," as robbery is a larceny by force or threat of force, every robbery includes within it a larceny.  UCMJ, art. 122 ("Any person . . . who with intent to *steal* takes anything of value from [a person] . . . against his will, by

3

means of force or violence or fear of immediate or future injury . . . is guilty of robbery . . . .").

Thus, for example, robbery requires as an element that the accused have the specific intent to permanently deprive the owner of the property. *See Manual for Courts-Martial, United States* (2012 ed.)[hereinafter *MCM*] pt. IV, ¶ 47.b(6). It is a complete defense to robbery that (in an armed carjacking for example) the accused did not intend to permanently deprive the owner of the property (by abandoning the car in an area where it was likely to be found and returned).

However, the offenses of robbery and larceny differ in one key aspect. The maximum punishment for robbery is determined without regard to the value of the property stolen. *MCM* pt. IV, ¶ 47.e. For larceny, on the other hand, there is a tenfold increase in punishment if the value of the stolen property was more than $500. *MCM* pt. IV, ¶ 46.e(b) and (d).

Here, because appellant was advised of the elements of conspiracy to commit robbery, the military judge never explicitly elicited from appellant whether the criminal agreement included an agreement to steal more than $500.

In *United States v. Barton*, 60 M.J. 62 (C.A.A.F. 2004) our superior court addressed a similar issue. The accused in *Barton* had conspired to break into the "Powerzone" electronics store and steal electronics. In total, the *Barton* conspirators took over $10,000 worth of electronic equipment. The issue in that case was whether the plea inquiry adequately established that conspirators had agreed to steal over $100.[*]

As in this case, the military judge did not discuss whether the criminal agreement included a meeting of the minds on the amount of goods to be stolen. "As a result, at no point during the *Care* inquiry . . . did Appellant admit in declaratory fashion that he intended to steal more than $100 in merchandise." *Id*. at 65.

Nonetheless, the Court of Appeals for the Armed Forces (CAAF) affirmed the conviction. *Id*. at 66. The court focused on the plea inquiry "in whole" and noted that the element of value "is not a complex legal element . . . . [that] require[s] and intimate application of law to fact." *Id*. at 65.

Additionally, the CAAF noted that "[w]e cannot lose sight that this is a guilty plea case." *Id*. They further stated that "a guilty plea case is less likely to have developed facts . . . . With the benefit of appellate hindsight, one might well identify

---

[*] The threshold for increased punishment was changed from $100 to $500 in 2002. *See* Executive order 13262 § 5, April 11, 2002.

questions unasked or be tempted to look for the factual development that only a contested trial might contain." *Id.* (internal quotations and citations omitted).

The CAAF's reasoning in *Barton* is relevant to deciding this case. Appellant's criminal conspiracy continued to exist after the initial agreement. Thus, when appellant was informed by his girlfriend that Mr. SO had "a large amount of cash" on him, and continued with the planned robbery, the criminal agreement was then to steal "a large amount of cash." Similarly, when appellant pulled the actual $527 out of Mr. SO's wallet, the conspiracy continued to exist. We risk the dangers "appellate hindsight" when we "identify questions" (e.g. when did the conspirators know that the amount being stolen was over $500) that could have been answered in a contested trial.

Nonetheless, we find this case distinguishable from *Barton* for several reasons. First, *Barton* involved a theft of $10,000 of equipment, over the course of several nights. That is, the *Barton* conspirators carted away an amount of goods that was 1000% greater than the $100 threshold applicable to that case. Although not explicitly stated by the *Barton* court, it is clear in that case that as the conspirators emptied the store their conspiracy clearly expanded to stealing more than a mere $100. The *Barton* court was unwilling to therefore apply an unduly technical review of the plea inquiry in a case where the dollar value of the theft so greatly exceeded the $100 threshold. As even the *Barton* dissent admitted, "A common sense review would lead one to the conclusion that Appellant was unlikely to conspire to steal less than $100 from the Powerzone. . . ." *Id*. at 68 (J. Erdmann dissenting).

In this case, in contrast, the $527 stolen from Mr. SO was just 5% above the legal threshold for increased punishment. Common sense would not lead one to believe that a passerby, especially one who turns out to be homeless, was likely to have over $500 in cash.

Second, to the extent we could rely on the plea inquiry as "a whole" to resolve these issues, the inquiry was muddied when the military judge provided the elements for the wrong offense.

Accordingly, we find there is a substantial basis in law and fact to question the providence of appellant's plea. *Murphy*, 74 M.J. at 305. Accordingly, on these facts, we take view of the dissenting judge in *Barton*, and approve only so much of the charge that provides that appellant conspired to commit larceny of some value. *See Barton*, 60 M.J. at 68 (J. Erdmann dissenting).

## CONCLUSION

This court affirms only so much of the finding of guilty of the Specification of Charge I as finds that:

> [appellant] did, at or near the island of Oahu, Hawaii, on or about 3 January 2015, conspire with Private (E-2) Markel D. McNeil, Private (E-2) Terrell D. Price, and Mrs. Kassandra Melendez to commit an offense under the Uniform Code of Military Justice, to wit: larceny of property of some value, the property of Mr. S.O., and in order to effect the object of the conspiracy, the said Private (E-2) Quincy C. Broaden and Private (E-2) Markel D. McNeil, Private (E-2) Terrell D. Price, and Mrs. Kassandra Melendez did steal $527.00 from Mr. S.O.

The remaining findings of guilty are AFFIRMED.

Applying the factors set out by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we are confident that reassessment is appropriate. First, we look to the penalty landscape. The maximum punishment is reduced by four and one half years. Here, the adjudged sentence was a year and one half longer than the approved sentence because of the pretrial agreement. Second, appellant was sentenced by a military judge alone. Third, the gravamen of the criminal conduct included within the original offenses remains substantially the same. Thus, neither the penalty landscape nor the admissible aggravation evidence has significantly changed. Lastly, we have familiarity and experience with the remaining offenses to reliably determine what sentence would have been imposed at trial.

Reassessing the sentence on the basis of the noted error, the remaining findings of guilty, and the entire record, we AFFIRM the sentence as approved by the convening authority. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge CAMPANELLA and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

6