*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HITESMAN, J. STEPHENS, and GASTON,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Mason L. SPENCE**
Hospitalman (E-3), U.S. Navy
Appellant

**No. 201800241**

Decided: 27 November 2019

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Captain Ann K. Minami, JAGC, USN. Sentence adjudged 14 May 2018 by a general court-martial convened at Naval Base Kitsap, Bremerton, Washington, consisting of a military judge sitting alone. Sentence approved by the convening authority: reduction to pay grade E-1, confinement for four years, and a bad-conduct discharge.[1]

For Appellant: Major Matthew A. Blackwood, USMCR.

For Appellee: Captain William J. Mossor, USMC; Lieutenant Kurt W. Siegal, JAGC, USN.

Senior Judge HITESMAN delivered the opinion of the Court, in which Judge J. STEPHENS and Judge GASTON joined.

---

[1] Pursuant to the pretrial agreement, the convening authority suspended the reduction in pay grade and all confinement in excess of 28 months.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

HITESMAN, Senior Judge:

Appellant was convicted, pursuant to his pleas, of three specifications of attempted sexual abuse of a child, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880 (2012).

Appellant raises two assignments of error: (1) Specification 3 fails to state an offense and (2) his plea to Specification 3 was improvident because the military judge did not elicit a factual basis to satisfy all elements of the offense. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant began corresponding with "Mandy" in October 2017 using social media applications. Early in their relationship, Mandy told him that she was only 15 years old. However, Mandy was not a 15-year-old girl but was instead an online persona used by Naval Criminal Investigative Service (NCIS) agents. Over the next two months, Appellant engaged in conversations with Mandy that included discussions of explicit sexual activity and references to sexual intercourse. He expressed an interest in meeting Mandy in person to discuss sexual fantasies and in November 2017, he traveled to a hotel in Silverdale, Washington, to meet her. Mandy asked Appellant to bring her gummy bears and a Red Bull energy drink. When Appellant arrived at Mandy's hotel room with the requested snacks, he expected to discuss their sexual fantasies and possibly engage in sexual activity. He messaged Mandy from outside her door and was immediately apprehended by NCIS agents.

In an interview with NCIS agents, Appellant admitted that he went to the hotel expecting to engage in oral sex and possibly sexual intercourse with Mandy.

Appellant was initially charged with attempted sexual assault of a child in Specification 3, which alleged, in pertinent part, that he did:

> attempt to commit *sexual acts* upon a child who had attained the age of 12 years but had not attained the age of 16 years, to wit: corresponded via social media messaging with an individual he believed to be a 15 year old girl . . . about meeting up to

2

> *perform oral and vaginal intercourse with him*; . . . and, entered
> the hotel room where he understood the 15 year old to be locat-
> ed for the purpose of committing *sexual acts* with her.[2]

In his pretrial agreement (PTA) with the convening authority, Appellant agreed to plead guilty, by exceptions and substitutions, to the specification as an attempted sexual *abuse* of a child. The new Specification 3, as modified by the exceptions and substitutions, alleged in pertinent part that Appellant did:

> attempt to commit *lewd acts* upon a child who had attained the
> age of 12 years but had not attained the age of 16 years, to wit:
> corresponded via social media messaging with an individual he
> believed to be a 15 year old girl . . . about meeting up to *discuss*
> *sexual fantasies*; . . . and, entered the hotel room where he un-
> derstood the 15 year old to be located for the purpose of com-
> mitting *lewd acts* with her. [3]

Additional facts necessary to the resolution of the two assignments of error are included in the discussion.

## II. DISCUSSION

### A. Failure to State an Offense

Appellant avers that the modified Specification 3, alleging an attempted violation of Article 120b(c), UCMJ, fails to state an offense because it does not allege the particular lewd act that Appellant attempted. He further argues that the specification fails to state an offense because it fails to allege the intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person or to allege vulgarity.

The Government argues that Appellant has waived his claim that the specification fails to state an offense because he did not raise the issue at trial and entered an unconditional guilty plea. We review de novo whether an appellant has waived a particular issue. *United States v. Ahern,* 76 M.J. 194, 197 (C.A.A.F. 2017).

A motion to dismiss a specification for failure to state an offense is a waivable motion. RULE FOR COURTS-MARTIAL (RCM) 907(b)(2)(E), MANUAL FOR COURTS-MARTIAL, UNITED STATES (MCM) (2016 ed.). Failure to raise most

---

[2] Charge Sheet (emphasis added).

[3] Appellate Exhibit (AE) I at 5 (emphasis added).

motions before the court-martial adjourns "shall constitute waiver." RCM 905(e). However, a motion to dismiss for failure to state an offense is specifically excluded from such automatic waiver. *Id.*

Waiver is the "intentional relinquishment or abandonment of a known right" and differs from forfeiture. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "[F]orfeiture is the failure to make the timely assertion of a right." *Id.* Depending on the "right at stake," the appellant may have to "participate personally in the waiver"; there may be "certain procedures . . . required for waiver"; or the appellant's choice may have to be "particularly informed or voluntary." *United States v. Girouard,* 70 M.J. 5, 10 (C.A.A.F. 2011) (quoting *Olano*, 507 U.S. at 733).

Here, Appellant entered into a PTA with the convening authority agreeing to plead guilty to Specification 3 of the Charge as excepted and substituted. By pleading guilty to the specification as excepted and substituted, the appellant significantly reduced his punitive exposure. As initially charged, he faced a *mandatory* dishonorable discharge and a maximum of *30* years of confinement. By pleading instead to attempted sexual abuse of a child not involving sexual contact, he faced  a *non-mandatory* dishonorable discharge and a maximum confinement of *15* years. As part of his PTA, Appellant also "specifically agree[d] to waive all motions except those that are otherwise non-waivable pursuant to R.C.M. 705(c)(1)(B)."[4] Failure to state an offense is a waivable motion pursuant to RCM 907(b)(2)(E) and Appellant explicitly relinquished his right to raise that motion at trial. Appellant waived the issue leaving this court nothing to review on appeal.

## B. Appellant's Guilty Plea was Provident

Military judges have broad discretion to accept guilty pleas. *See United States v. Phillips,* 74 M.J. 20, 21 (C.A.A.F. 2008). We review the military judge's "decision to accept a guilty plea" applying an abuse of discretion standard. *United States v. Weeks,* 71 M.J. 44, 46 (C.A.A.F. 2012). Military judges abuse their discretion when they "accept a guilty plea without an adequate factual basis" or when the acceptance is "based on an erroneous view of the law." *Id.* We review de novo questions of law "arising from the guilty plea." *Id.* We must determine whether the record as a whole shows "a substantial basis in law and fact for questioning the guilty plea." *United States v.*

---

[4] AE I at 4.

*Finch,* 73 M.J. 144, 148 (C.A.A.F. 2014) (quoting *United States v. Negron,* 60 M.J. 136, 141 (C.A.A.F. 2004)).

A military judge has a "duty to accurately inform an appellant of the nature of his offense," to include the correct definition of legal concepts. *United States v. Murphy,* 74 M.J. 302, 308 (C.A.A.F. 2015) (quoting *Negron*, 60 M.J. at 141). But failing to "explain each and every element of the charged offense to the accused in a clear and precise manner is not reversible error if it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty." *Id.* at 308 (citation and internal quotation marks omitted). "Rather than focusing on a technical listing of the elements," we look at the "entire record to determine whether an accused is aware of the elements, either explicitly or inferentially." *United States v. Redlinski,* 58 M.J. 117, 119 (C.A.A.F. 2003).

Appellant contends his plea through exceptions and substitutions to Specification 3 was not provident for two reasons. First, he argues that he did not know what elements applied to the modified Specification 3. Second, he contends that the providence inquiry did not establish that the lewd act by conduct was sufficiently indecent.

We first consider Appellant's argument that the he did not know what elements applied to the modified Specification 3. The text of Article 120b(c), UCMJ, states:

> Any person subject to this chapter who commits a lewd act upon a child is guilty of sexual abuse of a child and shall be punished as a court-martial may direct.

10 U.S.C. § 920b(c). Article 120b, UCMJ, defines "lewd act," in pertinent part, as:

> (3) intentionally communicating indecent language to a child by any means, including via any communication technology, with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person; or

> (4) Any indecent conduct, intentionally done with or in the presence of a child, including via any communication technology, that amounts to a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations.

*Id.* Thus, a lewd act by conduct includes any indecent conduct done in the presence of a child without regard for the mental state of the accused, whereas a lewd act by communication of indecent language to a child requires that

the communication be accomplished with the intent to abuse, humiliate, degrade, or arouse or gratify the sexual desire of any person.

The specification was poorly drafted to begin with and it became even less precise after Appellant had negotiated a PTA that allowed him to plead guilty by exceptions and substitutions. Still, when read in its entirety, the specification contains the basic allegation that Appellant attempted to commit the lewd act of meeting with Mandy to discuss sexual fantasies.

Likewise, the Stipulation of Fact was poorly drafted. However, it was broken down into sections by specification. Under the section discussing Specification 3, Appellant admits that he arranged to meet Mandy at a hotel to discuss sexual fantasies. He further admits that his "conduct of discussing sexual fantasies with [Mandy] was indecent . . . vulgar and offensive."[5]

During the providence inquiry, the military judge defined the elements of Article 80, UCMJ, Attempt, and the underlying attempted offense of Article 120b(c), UCMJ, Sexual Abuse of a Child. The military judge did not separately provide the definition of "lewd act" but incorporated the definition into the elements of the attempted offense. The military judge advised Appellant that the elements of sexual abuse of a child are:

> First, that you committed a lewd act upon a child by intentionally engaging in indecent conduct, including via any communication technology;

> The second element, that at the time, the child had not attained the age of 16 years; and

> The third element, that the conduct amounted to a form of immorality relating to sexual impurity, which is grossly vulgar, obscene and repugnant to common propriety, and tends to excite sexual desire or depraved morals with respect to sexual relations.[6]

Appellant agreed he understood the elements of the offense and of the attempted offense.

The military judge's discussion of the elements makes clear that the specification alleges a lewd act by indecent conduct. Considering the military judge's providence inquiry, Charge Sheet, PTA, Stipulation of Fact, and Appellant's voluntary plea by exceptions and substitutions, we find that the rec-

---

[5] Prosecution Exhibit (PE) 1 at 3.

[6] Record at 24.

ord clearly establishes that Appellant "knew the elements, admitted them freely, and pleaded guilty because he was guilty." *Murphy*, 74 M.J. at 308.

We next consider Appellant's argument that the military judge did not conduct a sufficient providence inquiry. During the providence inquiry, the military judge asked Appellant to tell her in his own words what he did. Appellant explained that he arranged to meet Mandy to discuss sexual fantasies and that his actions were indecent because meeting a 15-year-old girl to discuss sexual fantasies would be viewed by society as "very inappropriate."[7] The military judge referred him to the Stipulation of Fact to explain what sexual fantasies he intended to discuss with Mandy. These fantasies included oral, anal, and vaginal sex as well as ejaculating in Mandy's mouth and on her face. Finally, Appellant admitted in the Stipulation of Fact that his "conduct of discussing sexual fantasies with [Mandy] was indecent because it was totally inappropriate to talk about these topics and in this manner with a 15-year-old girl. It is vulgar and offensive."[8]

Appellant's providence inquiry, supported by his Stipulation of Fact, demonstrates that he admitted that meeting with Mandy to discuss explicit sexual fantasies would be indecent and vulgar. We find that there is no substantial basis to question Appellant's plea and the military judge did not abuse her discretion in accepting it.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact and no error materially prejudicial to Appellant's substantial rights occurred. Arts. 59 and 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

Judge J. STEPHENS and Judge GASTON concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[7] *Id.* at 34.

[8] PE 1 at 3.