# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM 39806 (f rev)

———————————

### UNITED STATES
*Appellee*

**v.**

### James W. GREER, Jr.
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 18 July 2022

———————————

*Military Judge:* Bradley A. Morris; Andrew R. Norton (remand).

*Sentence:* Sentence adjudged on 30 July 2019 by GCM convened at Offutt Air Force Base, Nebraska. Sentence entered by military judge on 22 August 2019 and re-entered on 14 April 2021: Bad-conduct discharge, confinement for 60 days, reduction to E-1, and a reprimand.

*For Appellant:* Major Jenna M. Arroyo, USAF; Major Meghan R. Glines-Barney, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Cortland T. Bobczynski, USAF; Major Peter F. Kellett, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, POSCH, and CADOTTE, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one charge and specification of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 60 days, reduction to the grade of E-1, and a reprimand. The convening authority deferred Appellant's reduction to the grade of E-1 from 14 days after announcement of sentence until the entry of judgment (EoJ), and waived the mandatory forfeitures of pay and allowances for six months or until Appellant's release from confinement, whichever was sooner, for the benefit of Appellant's wife and dependent children. On 22 August 2019, the military judge signed the original EoJ.

Appellant's case is before us for the second time. In his initial appeal to this court, Appellant raised two assignments of error: (1) whether the convening authority's failure to dismiss with prejudice Specification 2 of the Charge and the excepted words of Specification 1 of the Charge constituted noncompliance with a material PTA term; and (2) whether Appellant was entitled to sentence relief because his case was not docketed with our court within 30 days of action by the convening authority. Additionally, we considered two other issues: (3) whether the convening authority failed to take action on the entire sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860, *Manual for Courts-Martial, United States* (2016 ed.); and (4) whether there was a substantial basis in law or fact to question Appellant's plea of guilty to striking CG with his "hands." We determined that remand to the Chief Trial Judge, Air Force Trial Judiciary, was warranted with regard to issues (1) and (3), and we deferred resolution of issues (2) and (4). *United States v. Greer*, No. ACM 39806, 2021 CCA LEXIS 127, at *3, *9–10 (A.F. Ct. Crim. App. 26 Mar. 2021) (unpub. op.).

On remand, the convening authority took action on the entire sentence and a military judge re-entered the judgment of the court-martial to reflect dismissal with prejudice consistent with the PTA. The record has returned to this

---

[1] References to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant pleaded not guilty to two specifications of aggravated assault, but guilty only to the lesser-included offense of assault consummated by a battery in Specification 1 of the Charge, except the words "with a force likely to produce death or grievous bodily harm." The PTA required the convening authority to withdraw and dismiss the excepted words in Specification 1 of the Charge and to withdraw and dismiss the second aggravated assault alleged in Specification 2 of the Charge.

court for completion of our review pursuant to Article 66(d), UCMJ, 10 U.S.C. § 866(d). Appellant has not raised additional assignments of error. We find error with respect to issue (4), and we take corrective action in our decretal paragraph.

## I. BACKGROUND

On the date of the offense, 4 August 2018, Appellant was stationed at Offutt Air Force Base, Nebraska. Appellant lived off-base in the nearby town of Bellevue with his wife, CG, and their young children.

In the early morning hours of 4 August 2018, Bellevue police received a report of a possibly suicidal male at Appellant's residence. When police officers arrived at the residence, they found Appellant and CG standing outside. CG had injuries to her head, neck, and torso, notably on the left side of her head and body, including a badly swollen left eye. Appellant admitted to the police that he had repeatedly struck CG that evening. Appellant's admissions included that: (1) he held CG down on the floor of their home; (2) he deliberately struck CG on the head and face more than once with his hand; (3) Appellant, not CG, was the aggressor; and (4) CG did not strike Appellant back but "kept telling [him] she was scared." The police arrested Appellant for domestic assault, and CG was taken to the emergency department of a nearby medical center to have her injuries treated.

Appellant was initially charged with two specifications of aggravated assault in violation of Article 128, UCMJ, but pleaded guilty by exceptions to one specification of the lesser-included offense of assault consummated by battery, also in violation of Article 128, UCMJ. As pleaded to by Appellant, the specification alleged Appellant did "commit an assault upon [CG] by striking her more than once on the head and torso . . . with his hands."

In accordance with the PTA, Appellant entered a stipulation of fact admitting his guilt to assault consummated by battery against CG, including the admissions to the police described above. Appellant stipulated that he struck CG "on the head and torso with his hands." During the providence inquiry, Appellant told the military judge that he had only a partial memory of what happened on the night of the assault. Appellant stated he remembered drinking "mostly beer" but not how much he drank. Appellant denied any recollection of assaulting CG. Appellant remembered the police arriving at his house, and that he went outside to meet one officer, but recalled none of their conversation. Appellant did not recall being arrested or being transported to jail. However, Appellant told the military judge that he believed he was guilty after reviewing the evidence against him, including: (1) a 45-minute video recording from a Bellevue police cruiser which captured incriminating statements that Appellant made about striking CG; (2) photos taken of injuries to CG's eye,

lips, neck, and torso; and (3) records of CG's medical treatment on 4 August 2018. Appellant stipulated to the admission of each of these three items and that they were "accurate."

In the military judge's guilty plea inquiry, the following colloquy occurred:

MJ [Military Judge]: As we talked about, it is required under the law for you to be found guilty that you caused an offensive touching, a non-consenting touching, of [CG]. Based on your review of the evidence and your knowledge of the case that the [G]overnment has, what did you do?

ACC [Appellant]: Your Honor, I hit her in the head and torso in some manner.

MJ: When you say "hit", with what?

ACC: My hand, Your Honor.

MJ: Both hands, one hand; do you recall?

ACC: I'm not sure, Your Honor.

MJ: Could it have been both? I ask because it is charged as "hands," plural. I recognize that we tend to use our dominant hand more than anything for most anything. About the only thing I can do with my left hand is catch a baseball. Everything else seems to be with the right hand because I'm right hand dominant. From what you know and what you recall, hand or hands? Do you have a recollection?

ACC: *Based on everything I have seen, Your Honor, I would venture to say hand, singular.*

MJ: Are you right or left-hand dominant?

ACC: Right-handed, Your Honor.

MJ: As is 90 percent of the population so that makes sense.

CivDC [Civilian Trial Defense Counsel]: Your Honor, if we can make the pen and ink change now, we could. I imagine the [G]overnment wouldn't object if the court sees it as necessary.

MJ: Trial counsel, take a few moments.

CTC [Circuit Trial Counsel]: I wouldn't object, but I also don't think it's necessary.

MJ: Okay. We're going to take a break here in just a moment. [Appellant], one of the last things we will discuss before the recess is, you are telling me that, on the 4th of August 2018 last

4

> year, at your house, you physically struck your spouse on her face and torso with your hand, your dominant hand. Potentially both, but probably the majority, if not all, was with your dominant hand. . . .

(Emphasis added.)

The military judge then moved on to address the possible existence of any affirmative defense, without further discussion of whether Appellant had struck CG with his "hand" or "hands." The word "hands" was not altered on the charge sheet. In announcing findings, the military judge found Appellant, "in accordance with [Appellant's] plea of guilty," guilty of the lesser-included offense of assault consummated by a battery.

## II. DISCUSSION

## A. Providency of Appellant's Guilty Plea to Striking CG with his "Hands"

### 1. Law

We review a military judge's decision to accept an accused's guilty plea for an abuse of discretion. *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). "An abuse of discretion occurs when there is 'something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea.'" *Id.* (quoting *Inabinette*, 66 M.J. at 322).

"The military judge must ensure there is a basis in law and fact to support the plea to the offense charged." *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (citing *Inabinette*, 66 M.J. at 321–22) (additional citation omitted). The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014). "A plea is provident so long as [the a]ppellant was 'convinced of, and [was] able to describe, all of the facts necessary to establish [his] guilt.'" *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (second and third alterations in original) (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). "This court must find 'a substantial conflict between the plea and the accused's statements or other evidence' in order to set aside a guilty plea. The 'mere possibility' of a conflict is not sufficient." *United States v. Watson*, 71 M.J. 54, 58 (C.A.A.F. 2012) (quoting *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996)).

### 2. Analysis

As noted above, Appellant has not raised the issue of whether his plea of guilty was improvident with respect to striking CG with his "hands" as opposed

to striking her with only one "hand." However, during this court's initial review, we raised the matter and ordered the Government to show good cause "as to whether there [was] a substantial basis in law or fact to question Appellant's plea of guilty to striking CG with his 'hands.'" The Government answered, contending that no corrective action was necessary because, essentially: (1) Appellant's responses during the guilty plea inquiry merely raise the "possibility" of a conflict with his plea; (2) the other evidence before the military judge when he accepted the plea, such as Appellant's statement to the police that he held CG down, and CG's description of how Appellant held her as recorded in her medical records, supports a reasonable inference that Appellant accomplished the striking of CG on her head and torso by using both hands; and (3) assuming there is an actual discrepancy regarding Appellant's plea, it is "de minimis" and did not render the military judge's acceptance of the guilty plea an abuse of discretion. Alternatively, the Government contends that if this court finds Appellant's plea to using his "hands" was improvident, we should modify the word "hands" to "hand" and affirm the specification as modified.

We find the military judge's colloquy with Appellant did raise a substantial basis to question the providency of Appellant's guilty plea to striking CG with his "hands" rather than one hand, and that the military judge abused his discretion by accepting Appellant's plea without modification. In order to find the guilty plea provident, a military judge must establish that the accused believes he is guilty of the offense to which he pleaded. *See Murphy*, 74 M.J. at 308. In this case, Appellant told the military judge that he could not remember the offense, but he believed he used one hand to strike CG, rather than both hands as charged and pleaded. Having developed this discrepancy, the military judge failed to resolve it. Indeed, the military judge's comments as he transitioned to a discussion of potential defenses acknowledged that Appellant was only "potentially" guilty of using both hands, but possibly only used his "dominant hand," and that Appellant was "telling" the military judge he used his dominant hand. We note that CG noticeably suffered injuries to the left side of her face and body, suggesting that Appellant was swinging at her with his right arm as he faced her. However, what is most significant is that the military judge elicited that Appellant doubted the specification he pleaded to accurately described what actually happened. This is more than the mere possibility of a conflict. *See Watson*, 71 M.J. at 58.

Although we find a substantial discrepancy, we agree with the Government that it does not imperil the providency of Appellant's guilty plea as a whole. In light of the representations of the parties at trial and on appeal, we find Appellant's plea to using his "hands" as opposed to his "hand" was not a material term of the PTA. We find we may remedy the error by modifying the word "hands" to "hand," as the Defense suggested at trial and as the Government (alternatively) proposes on appeal. *See United States v. English*, 79 M.J. 116,

120 (C.A.A.F. 2019) (citations omitted) ("In performing its review under Article 66(c), UCMJ, [10 U.S.C. § 866(c),] a Court of Criminal Appeals [ ] may narrow the scope of an appellant's conviction to that conduct it deems legally and factually sufficient.") We do so in our decretal paragraph.

Having modified the findings, we have considered the reassessment of Appellant's sentence in light of the factors enumerated in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013) (citations omitted). We find that reassessment is appropriate and, based on the totality of the circumstances, conclude that had the error not occurred, the military judge would have imposed the same adjudged sentence of a bad-conduct discharge, confinement for 60 days, reduction to the grade of E-1, and a reprimand.

**B. Post-Trial Delay**

The Charge was referred for trial on 15 April 2019. Appellant was sentenced on 30 July 2019, the convening authority signed her original Decision on Action memorandum on 21 August 2019, and the military judge originally entered the judgment on 22 August 2019. The court reporter certified the record on 23 August 2019 and the transcript of the proceedings on 11 September 2019; however, assembly of the copies of the record was not completed until 11 October 2019. Appellant's record of trial was originally docketed with this court on 31 October 2019.

In his original assignments of error to this court, Appellant asserted that the lapse of 41 days between the convening authority's original decision on action and the docketing of Appellant's case with this court constituted a facially unreasonable delay, in violation of his due process right to timely post-trial and appellate review. Appellant relied on *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), where the United States Court of Appeals for the Armed Forces (CAAF) held that failure to docket a record of trial with the Court of Criminal Appeals within 30 days of the convening authority's action constituted a facially unreasonable delay, which triggered an analysis of the four factors enumerated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), to determine if the appellant was entitled to relief. Appellant recognized that *Moreno*'s 30-day threshold for facially unreasonable delay was created under the statutory post-trial processing regime that applied to courts-martial where charges were referred to trial prior to 1 January 2019.

The Charge in the instant case was referred on 29 January 2019, and therefore Appellant's case was generally, although not entirely, subject to the post-trial process implemented in the 2019 version of the *Manual for Courts-Martial, United States*. Under the applicable post-1 January 2019 procedures, the military judge's EoJ has effectively replaced the convening authority's action as the event that marks the end of the post-trial phase and the beginning of

appellate proceedings. *See* Rule for Courts-Martial 1111(a)(2). Appellant acknowledged this court's observation in *United States v. Moody-Neukom* that

> adapting the *Moreno* analysis to the new rules will not be a simple matter of substituting the military judge's "entry of judgment"—or the convening authority's decision whether to take action on the trial results, or the certification or completion of the record of trial, or any other post-trial event—into the place of "convening authority action" within the *Moreno* framework for determining facially unreasonable delay.

No. ACM S32594, 2019 CCA LEXIS 521, at *5 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.). However, Appellant argued the 30 days specified by *Moreno* should continue to run from the date of the convening authority's decision on action "in order to best safeguard" an appellant's due process rights.

After the parties filed their original briefs, this court decided *United States v. Livak*, 80 M.J. 631 (A.F. Ct. Crim. App. 2020), which adapted the *Moreno* thresholds for unreasonable post-trial delay to the new post-trial processing regime. Specifically, *Livak* established an aggregated 150-day standard for facially unreasonable delay from sentencing to docketing with the Court of Criminal Appeals for cases referred to trial on or after 1 January 2019. *Id.* at 633. In Appellant's case, only 93 days elapsed between Appellant's sentencing and the original docketing with this court. Accordingly, we find no facially unreasonable delay under the *Moreno* and *Livak* thresholds.

Because the CAAF has never held that the specific time standards in *Moreno* were the *exclusive* means by which an appellant could demonstrate facially unreasonable delay, *see United States v. Swanson*, No. ACM. 38827, 2016 CCA LEXIS 648, at *21 (A.F. Ct. Crim. App. 27 Oct. 2016) (unpub. op.), we have considered whether the actual delays in this case were facially unreasonable. We find the Government exercised a reasonable degree of diligence. Finally, recognizing our authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude no such relief is warranted.

## III. Conclusion

The findings of guilty as to the Charge and Specification 1 are affirmed, excepting the word "hands" and substituting therefor the word "hand." The excepted word is set aside. The substituted word is affirmed.

The findings, as entered and modified, and the sentence, as entered and reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings, as modified, and sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court