# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

───────────────

**No. ACM 40627**

───────────────

**UNITED STATES**
*Appellee*

**v.**

**Michael J. HYMEL**
Captain (O-3), U.S. Air Force, *Appellant*

───────────────

Appeal from the United States Air Force Trial Judiciary[1]

Decided 11 September 2025

───────────────

*Military Judge*: Michael A. Schrama (arraignment and motions); Wesley A. Braun.

*Sentence*: Sentence adjudged on 27 September 2023 by GCM convened at Keesler Air Force Base, Mississippi. Sentence entered by military judge on 4 December 2023: Confinement for seven days, forfeiture of $3,945.00 pay per month for one month, and a reprimand.

*For Appellant*: Lieutenant Colonel Luke D. Wilson, USAF; Captain Michael J. Bruzik, USAF.

*For Appellee*: Lieutenant Colonel Jenny A. Liabenow, USAF; Major Regina Henenlotter, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Captain Heather R. Bezold, USAF; Mary Ellen Payne, Esquire.

Before DOUGLAS, MASON, and KUBLER, *Appellate Military Judges*.

Senior Judge DOUGLAS delivered the opinion of the court, in which Judge MASON and Judge KUBLER joined.

───────────────

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A). *See Manual for Courts-Martial*, *United States* (2024 ed.).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

DOUGLAS, Senior Judge:

A general court-martial composed of a trial judge convicted Appellant, consistent with his pleas, and pursuant to a plea agreement, of one specification of willful dereliction of duty, in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892.[2] Consistent with the plea agreement, two specifications of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920, one specification of assault consummated by battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928, one specification of obstruction of justice, in violation of Article 131b, UCMJ, 10 U.S.C. § 931b, and two specifications of fraternization in violation of Article 134, UCMJ, 10 U.S.C. § 934, were withdrawn and dismissed without prejudice that would "ripen into prejudice upon completion of appellate review." The trial judge sentenced Appellant to confinement for seven days, forfeiture of $3,945.00 pay per month for one month, and a reprimand. The convening authority took no action on the findings or sentence and provided the language for the reprimand.

Appellant raises two issues on appeal which we have rephrased: whether (1) Appellant's plea is provident; and (2) the trial court had personal jurisdiction over Appellant.

We find no error materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

In the summer of 2019, Appellant was a member of the Louisiana Air National Guard (LA ANG) when he and his unit deployed to Andersen Air Force Base, Guam. At the time of this deployment, Appellant was a First Lieutenant (O-2). A female subordinate unit member on this deployment was AB.[3] They had not previously known or worked together as AB was a recent graduate of her technical training. While deployed, Appellant engaged in conversations of a personal nature that Appellant stipulated were "inappropriate between a commissioned officer and enlisted servicemembers."

---

[2] All references to the UCMJ and to the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] AB was also a member of the LA ANG. Out of respect for her privacy, we do not disclose her grade or use other further identifying information in this opinion.

On 6 July 2019, Appellant and the unit's first sergeant, Master Sergeant (MSgt) DB, socialized together. They visited multiple off-base bars. Appellant consumed alcohol to the point of intoxication.

Sometime during the evening, Appellant and MSgt DB were in the same location as AB and other enlisted Airmen from their unit. Appellant danced with AB in very close proximity and in a provocative manner. Although Appellant disputed any allegation of inappropriate contact, he admitted, during his providence inquiry with the military judge, that "if [he] were not inebriated or intoxicated [he] would have noticed that her closeness . . . could have been perceived to other people as something of a nature that was not what an officer and enlisted should be doing. In public or private much less."

Appellant, MSgt DB, and AB left the establishment together, and returned to their hotel. After arriving, Appellant and AB went to the beach area of their hotel where several unit members were gathered. In his inebriated condition, Appellant sat in a lounge chair and fell asleep where he remained until the next morning.

## II. DISCUSSION

### A. Providency of Plea

Appellant asserts his plea to willful dereliction of duty is improvident because the trial judge (1) failed to elicit a factual basis that Appellant's behavior was inappropriate and unprofessional such that it detracted from the superior-to-subordinate relationship; and (2) failed to elicit a violation of Air Force Instruction (AFI) 1-1. We are not persuaded. We find Appellant's pleas provident.

#### 1. Additional Background

During his guilty plea, Appellant affirmed he understood the elements to his offense, and he admitted to the willful commission of his offense, dereliction of duty, as found in AFI 1-1, *Air Force Standards*. As a prior enlisted Airman, and through his commissioning training, Appellant admitted he was well aware of his duty to not detract from professional superior-subordinate relationships. He admitted that on 6 July 2019, he willfully violated this duty by drinking to excess around AB and other subordinate Airmen, dancing closely to AB and in a provocative manner, and then by falling asleep on a lounge chair in the beach area of their hotel in front of AB and the others. Appellant further explained that he did not have a defense to his actions due to voluntary intoxication.

However, in his presentencing proceedings, through counsel, Appellant admitted a ten-page affidavit prepared approximately one year prior to his plea

agreement. In this affidavit, he declared that he made "no inappropriate comments or displays of any kind" when interacting with AB. This statement was contrary to the written stipulation of fact, Prosecution Exhibit 1, and Appellant's providency inquiry. The trial judge reopened the providency inquiry. The trial judge then asked Appellant to explain the discrepancy. Appellant explained that this affidavit was prepared prior to the preferral and referral of the dereliction of duty charge, and that he should have written more clearly that no inappropriate "sexual contact or sexual comments or sexual displays of any kind" were made to or regarding AB.

The trial judge clarified with Appellant that what he was pleading guilty to included "excessive drinking[,] passing out on a chair in front of subordinates, [and] dancing on a tight dance floor with subordinates . . . ." The trial judge directed Appellant to paragraph 2.2.2 of AFI 1-1 and again clarified with Appellant that he thought his behavior on 6 July 2019 detracted from the superior-subordinate authority required in professional military relationships. Appellant again affirmatively responded, "Yes, sir." The trial judge determined the inconsistency was resolved and found Appellant's plea remained provident.

### 2. Law

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015) (citation omitted).

We apply a "substantial basis" test by determining "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (citation omitted).

"[W]hen a plea of guilty is attacked for the first time on appeal, the facts will be viewed in the light most favorable to the [G]overnment." *United States v. Arnold*, 40 M.J. 744, 745 (A.F.C.M.R. 1994) (citation omitted). Reviewing courts "must accept all of the facts in the parties' stipulation as true." *United States v. Castro*, 81 M.J. 209, 211 (C.A.A.F. 2021) (citation omitted). This is so because "[u]nless properly withdrawn or ordered stricken from the record, a stipulation of fact that has been accepted is binding on the court-martial and may not be contradicted by the parties thereto." *Id.* (quoting Rule for Courts-Martial (R.C.M.) 811(e)).

An appellant bears the "burden to demonstrate a substantial basis in law and fact for questioning the plea." *United States v. Finch*, 73 M.J. 144, 148

(C.A.A.F. 2014) (quoting *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004)). When entering a guilty plea, the accused should understand the law in relation to the facts. *United States v. Care*, 40 C.M.R. 247, 251 (C.M.A. 1969).

The record of trial must show that the trial judge "questioned the accused about what he did or did not do, and what he intended." *Id.* at 253. This is to make clear to the trial judge whether the accused's acts or omissions constitute the offense to which he or she is pleading guilty. *Id.*

"If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (internal quotation marks and citation omitted).

"This court must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (internal quotation marks and citation omitted).

"A plea is provident so long as [an] appellant was convinced of, and was able to describe, all of the facts necessary to establish his guilt." *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (alterations, internal quotation marks, and citation omitted). Moreover:

> [F]ailure to define correctly a legal concept or explain each and every element of the charged offense to the accused in a clear and precise manner is not reversible error if it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty.

*Id.* (original alteration, internal quotation marks, and citations omitted).

In order to convict Appellant of willful dereliction of duty as charged, the trial judge was required to find Appellant's plea provident to the following elements: (1) that Appellant had a certain duty, that is to refrain from engaging in inappropriate and unprofessional conduct with AB that detracted from the superior-to-subordinate authority, in violation of AFI 1-1, *Air Force Standards*; (2) that Appellant knew of his duty; and (3) that on or about 6 July 2019, at or near Andersen Air Force Base, Guam, Appellant was willfully derelict in the performance of that duty by failing to refrain from engaging in inappropriate and unprofessional conduct with AB that detracted from the superior-to-subordinate authority, in violation of AFI 1-1, *Air Force Standards*. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 18.b.(3)(a)–(c).

"A duty may be imposed by treaty, statute, regulation, lawful order, standard operating procedure, or custom of the Service." *MCM*, pt. IV, ¶ 18.c.(3)(a).

"'Willfully' means intentionally." *MCM*, pt. IV, ¶ 18.c.(3)(c). It refers to the doing of an act knowingly and purposely, specifically intending the natural and probable consequences of the act. *Id.*

> Voluntary intoxication, whether caused by alcohol or drugs, is not a defense. However, evidence of any degree of voluntary intoxication may be introduced for the purpose of raising a reasonable doubt as to the existence of actual knowledge [or] willfulness . . . if actual knowledge [or] willfulness . . . is an element of the offense.

R.C.M. 916(l)(2).

"Relationships are unprofessional, whether pursued and conducted on or off-duty, when they detract from the superior-to-subordinate authority . . . ." AFI 1-1*, Air Force Standards*, ¶ 2.2.2. (7 Aug. 2012).

### 3. Analysis

Viewing the facts in the light most favorable to the Government, we consider Appellant's claim that the trial judge failed to elicit a factual basis to Appellant's plea and that the trial judge failed to elicit a violation of AFI 1-1. *See Arnold*, 40 M.J. at 745. We are not persuaded. We find Appellant's pleas provident.

Appellant admitted he had a military duty to refrain from behavior that was inappropriate and unprofessional such that it detracted from the superior-to-subordinate relationship. Appellant knew of this duty as he had been counseled about it. Finally, Appellant willfully violated this duty when on 6 July 2019, he became drunk to the point of intoxication around AB and other enlisted Airmen, danced closely next to AB and danced provocatively with her, and then fell asleep in a beach lounge chair in the presence of AB and other enlisted Airmen. Here, Appellant "knew the elements, admitted them freely, and pleaded guilty because he was guilty." *Murphy*, 74 M.J. at 308. Further, we find Appellant did not reasonably raise the defense of voluntary intoxication to either the knowledge element or the willful element of the offense. R.C.M. 916(l)(2).

We turn to the question of whether Appellant set up a matter inconsistent with his plea at any time during the proceeding. *See Hines*, 73 M.J. at 124. We find that Appellant did set up a matter inconsistent with his plea when he admitted his ten-page affidavit in his presentencing hearing. In the affidavit he declared he had made "no inappropriate comments or displays of any kind" when interacting with AB. Identifying this inconsistency with his guilty plea, the trial judge reopened the providency plea and asked Appellant to explain the discrepancy. Appellant explained he should have written more clearly that no inappropriate "sexual contact or sexual comments or sexual displays of any

kind" were made to or regarding AB. Here, the trial judge resolved the apparent inconsistency. *Id.* We are convinced Appellant's behavior on the dance floor with AB, and in the presence of others, along with his behavior of drinking to excess and sleeping in a lounge chair is sufficiently inappropriate and unprofessional that it detracted from the superior-to-subordinate relationship between Appellant and AB, as well as the other enlisted Airmen present. Here, Appellant has not met his burden to demonstrate a substantial basis in law and fact for questioning his guilty plea. *Finch*, 73 M.J. at 148.

## B. Personal Jurisdiction

### 1. Additional Background

As discussed, Appellant was a member of the LA ANG and had been deployed to Guam by 6 July 2019, the date of the offense. On appeal, Appellant avers that the United States Air Force did not comply with its regulation on recalling members to active duty for purposes of trial in accordance with Department of the Air Force Instruction (DAFI) 51-201, *Administration of Military Justice* (14 Apr. 2022).

On 24 June 2025, the court granted the unopposed Government Motion to Attach (Second), attaching to the record three declarations of legal office personnel, one Recall Approval Memorandum from the Secretary of the Air Force, and five orders demonstrating Appellant's involuntary recall.[4]

From 9 June 2019 until 13 October 2019, Appellant was mobilized to federal active duty orders under Title 10, which included the date of the charged offense (6 July 2019). On 24 April 2020, The Adjutant General (TAG) for the LA ANG concurred with the recall of Appellant for the purposes of a trial by court-martial. On 10 May 2020, the legal advisor to the Air National Guard Readiness Center informed the 81 Training Wing legal office (81 TRW/JA) that the 201st Mission Support Squadron commander (201 MSS/CC) concurred with the decision to bring Appellant's case to court-martial.

On 1 December 2020, the Government requested approval from the Secretary of the Air Force (SecAF) to recall Appellant to active duty to preserve the possibility of confinement or restriction on liberty as a punishment option should he be convicted at a court-martial. The record reflects that either on 28 October 2021, or on 29 October 2021, Second Air Force commander (2 AF/CC)

---

[4] At the time the court granted the unopposed Government Motion to Attach (Second), we reserved consideration of the attachments. We consider them now to resolve Appellant's raised issue on personal jurisdiction, which is not easily resolved through a review of the record. *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

was notified that SecAF approved any recall to active duty that might be ordered.

On 30 June 2022, Appellant was activated to Title 10 status to be informed of the original charges that were preferred this same date. Later, Appellant was activated on Title 10 orders between 8 August 2022 and 10 August 2022, for his Article 32, UCMJ, 10 U.S.C. § 832, hearing which was held on 9 August 2022. On 23 September 2022, Appellant was again placed on Title 10 orders, in which he was served a copy of the referral to a general court-martial for these original charges.

From 4 to 6 December 2022, Appellant was recalled to Title 10 status for his arraignment, which was held on 5 December 2022. From 2 April 2023 through 16 April 2023, Appellant was recalled to Title 10 status for his motions hearing, which was held on 11 April 2023.

On 15 September 2023, through counsel, Appellant offered to enter into a plea agreement with the convening authority and offered to plead guilty to an additional charge and specification, the above discussed Article 92, UCMJ, violation, in exchange for dismissal of the original charges and specifications described *supra*. On 22 September 2023, the convening authority approved the offer to plead guilty. Appellant was recalled to Title 10 status from 25 through 28 September 2023 for his court-martial, which took place on 26 and 27 September 2023. On 26 September 2023, the additional charge and specification were preferred, referred to the same general court-martial previously convened, and served upon Appellant.

Interestingly, at trial, Appellant's trial defense counsel indicated awareness of the process used to recall Appellant throughout the various stages of proceedings and specifically stated he did not see any issues with personal jurisdiction and would affirmatively waive the issue, if he could, of personal jurisdictional concerns over Appellant's status for his court-martial.

> [Defense Counsel:] We see no jurisdictional issues and we would affirmatively waive that if we believe there is no jurisdiction issues either at the time of the offense or at the time of any [Article] 39(a), [UCMJ, 10 U.S.C. § 839,] we are satisfied proper jurisdiction existed.

> [Trial Judge:] [Appellant] is that also your understanding that you are currently on active duty orders at this time?

> [Appellant:] Yes, sir.

### 2. Law

This court reviews questions of jurisdiction de novo. *United States v. Hale*, 78 M.J. 268, 270 (C.A.A.F. 2019). "When challenged, the [G]overnment must

prove jurisdiction by a preponderance of evidence." *Id.* (citing *United States v. Morita*, 74 M.J. 116, 121 (C.A.A.F. 2015) (additional citation omitted)).

"Generally, there are three prerequisites that must be met for courts-martial jurisdiction to vest: (1) jurisdiction over the offense, (2) personal jurisdiction over the accused, and (3) a properly convened and composed court-martial." *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006) (citing R.C.M. 201(b)).

"[J]urisdiction over the person depends on the person's status as a 'person subject to the Code' both at the time of the offense and at the time of trial." *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012).

Failure by the defense to move to dismiss for lack of jurisdiction at trial does not result in a waiver, and lack of jurisdiction may be raised for the first time on appeal. *United States v. Reid*, 46 M.J. 236, 240 (C.A.A.F. 1997); R.C.M. 905(e); R.C.M. 907(b)(1).

When lack of jurisdiction is raised for the first time on appeal, the Government may meet its burden by submitting documents to demonstrate that jurisdiction existed over the appellant. *See United States v. Oliver*, 57 M.J. 170, 172 (C.A.A.F. 2002). The Government bears the burden to prove jurisdiction by a preponderance of the evidence. *Id.* This court can consider "appropriate documentation" submitted by the Government on appeal to prove jurisdiction existed at the contested time. *See United States v. Heimer*, 34 M.J. 541, 548 (A.F.C.M.R. 1991). Copies of official orders are sufficient to establish personal jurisdiction over an accused. *See United States v. Gardner*, 2003 CCA LEXIS 198, at *5–6 (A.F. Ct. Crim. App. 27 Mar. 2003) (unpub. op.).

Article 2(d)(1), UCMJ, 10 U.S.C. § 802(d)(1), states in relevant part that:

> A member of a reserve component who is not on active duty and who is made the subject of proceedings under . . . section 830 (article 30) with respect to an offense against this chapter may be ordered to active duty involuntarily for the purpose of—(A) a preliminary hearing under section 832 of this title (article 32); [or] (B) trial by court-martial.

Article 2(d)(3), UCMJ, states that "[a]uthority to order a member to active duty under paragraph (1)[, *supra*,] shall be exercised under regulations prescribed by the President."

The President prescribed R.C.M. 204, which states: "The Secretary concerned shall prescribe regulations setting forth rules and procedures for the exercise of court-martial jurisdiction . . . over reserve component personnel under Article 2(a)(3) and 2(d), subject to the limitations of this Manual and the UCMJ."

At the time of Appellant's preferral of the original charges, DAFI 51-201 had several relevant provisions regarding recall to active duty of reserve component members for judicial action:

> 3.6.2.2: Convening authorities with concurrent jurisdiction must coordinate before disposition is determined. Accordingly, prior to taking judicial action against an ANG member, legal offices, commanders, and convening authorities at all attached Regular DAF unit or host commands must coordinate with 201 MSS through ANGRC (NGB) . . . Such coordination is required to ensure jurisdiction properly attaches. Note: Attached/host command legal office coordination with the National Guard Bureau, Office of the General Counsel (NGB-GC) is required; however, the NGB-GC is not an active duty SJA, but a legal advisor assigned to support 201 MSS/CC in ensuring appropriate Total Force Discipline with regard to current and former ANGUS members.

> . . . .

> 3.8.2. An ARC member must be in a Title 10 federal status for the following stages in the court-martial process:

>> 3.8.2.1. While in pretrial confinement;

>> 3.8.2.2. Preferral;

>> 3.8.2.3. Article 32 preliminary hearing;

>> 3.8.2.4. Service of referral documents; and

>> 3.8.2.5. Any court-martial proceeding at which the accused has a right to be present, to include arraignment and sentencing proceedings.

Prior to arraignment, the Government must acquire approval from SecAF to allow confinement or restriction on liberty as a punishment at a court-martial. Article 2(d)(5), UCMJ, 10 U.S.C. § 802(d)(5); DAFI 51-201, ¶ 3.8.1.

**3. Analysis**

The record and attachments demonstrate, by a preponderance of the evidence, that the Government correctly obtained personal jurisdiction over Appellant for each stage of his court-martial process.

Prior to taking any judicial action, 81 TRW/JA coordinated with both TAG-LA and 201 MSS, the respective guard and active-duty units with concurrent jurisdiction over Appellant. Both units concurred with recalling Appellant to active duty for the purpose of trial by court-martial. This coordination before disposition satisfied paragraph 3.6.2.2 of DAFI 51-201.

SecAF approved Appellant's recall to Title 10 status to preserve the possibility of confinement. The general court-martial convening authority (GCMCA) in this case, the 2 AF/CC, gained SecAF's approval on 28 or 29 October 2021, prior to preferral of the original charges in Appellant's case.

The Government acquired personal jurisdiction over Appellant at every subsequent stage of the court-martial process:

- preferral (30 June 2022, Title 10 status 30 June 2022);
- Article 32, UCMJ, hearing (9 August 2022, Title 10 status 8–10 August 2022);
- referral (23 September 2022, Title 10 status 23 September 2022);
- arraignment (5 December 2022, Title 10 status 4–6 December 2022); and
- motions and voir dire hearing (11–14 April 2023, Title 10 status 2–16 April 2023).

Appellant was also in Title 10 status from 25–28 September 2023 during the preferral, notification of preferral, referral, and referral service of the additional charge and its specification, and the subsequent findings and sentencing hearings (26–27 September 2023).

At every relevant portion of the court-martial process, Appellant was on Title 10 orders and the Government had personal jurisdiction over him. For the convicted charge, Appellant waived his right to an Article 32, UCMJ, hearing, pursuant to his plea agreement, so the Government was not required to hold one. Similarly, Appellant waived his right to the statutory five-day waiting period following service of referral for the additional charge and its specification.

Here, the Government has met its burden to prove by a preponderance of the evidence that they complied with the requirements of Article 2, UCMJ, and DAFI 51-201. *Hale*, 78 M.J. at 270. We are convinced the Government had personal jurisdiction over Appellant for his court-martial.

### III. CONCLUSION

The findings and sentence are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court